# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01585-COA

**TRIANGLE CONSTRUCTION CO., INC.**                          **APPELLANT**

**v.**

**FOUCHE AND ASSOCIATES, INC.**                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/2015 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MACY DERALD HANSON |
| ATTORNEY FOR APPELLEE: | CECIL MAISON HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED IN FAVOR OF APPELLEE |
| DISPOSITION: | AFFIRMED – 05/09/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P.J., FOR THE COURT:**

¶1.    Triangle Construction Company (Triangle) filed suit in the Circuit Court of Rankin County against East Madison Water Association (EMWA) and Fouche[1] and Associates (Fouche).  In the suit, Triangle alleged that it had entered into a contract with EMWA that had been breached by both EMWA and Fouche, the designated engineer in the contract.  It further alleged, based upon several theories, that it was entitled to recover damages from Fouche.  Both Fouche and EMWA filed separate motions for summary judgment. The record

_____

[1] Documents in the record vary with respect to the spelling of "Fouche"—in some instances, it is spelled "Fouché," while in other instances, it is spelled "Fouche."  For consistency, we use "Fouche" throughout this opinion.

does not inform us as to the status of EMWA's motion.  However, the circuit court granted

Fouche's motion and entered judgment accordingly pursuant to Rule 54(b) of the Mississippi

Rules of Civil Procedure.  Triangle now appeals, arguing that there existed genuine issues

of material fact regarding:

> (1) whether Fouche, as the designing engineer of the water-installation project at issue in this lawsuit, breached the tort-based duties that it owed to Triangle, the contractor, to design and manage the project in a reasonable and prudent manner; (2) whether Fouche had entered into the terms of the Specifications for Water Distribution System Addition 2009 contract either as a signatory or through its conduct, as an implied[-]in-fact contract; (3) whether Fouche was the responsible party for obtaining easements for this project, on behalf of [EMWA]; and (4) whether an accord-and-satisfaction agreement had been reached between Triangle and Fouche related to the claims pleaded by Triangle against Fouche.

Finding no genuine issue of material fact, we affirm.

## FACTS

¶2.     Triangle won a bid offered by EMWA for a construction project to build a water

system in Madison and Leake Counties.  On February 9, 2010, Triangle and EMWA entered

into the "Specifications for Water Distribution System Addition 2009" agreement, which

incorporates many contractual documents as part of the "Contract" between Triangle and

EMWA that is now at the center of this dispute.[2]  Triangle argues on appeal that Fouche, the

---

[2] For clarity, "Contract," as the word is used throughout this opinion, will refer to all contract documents encompassed within the "Specifications for Water Distribution System Addition 2009" agreement between EMWA and Triangle for the construction project of the water system, including "General Conditions (pages GC-1 to GC-57, inclusive)," which we reference several times throughout this opinion.

project's engineer, was also a party to the Contract; however, Fouche disagrees.

¶3.     Triangle asserts that while it performed its obligations satisfactorily under the Contract's terms, EMWA and Fouche did not. Specifically, Triangle argues that EMWA and Fouche did not obtain easements in a timely manner, as they had agreed to do in the Contract. Triangle further argues that EMWA and Fouche prematurely and negligently issued a notice instructing Triangle to proceed with its work ("Notice to Proceed") far before the easements necessary to continue that work had been acquired. Triangle maintains that these failures resulted in delays, as "Triangle could not perform its contractually obligated work" in "significant areas of the [p]roject." Furthermore, Triangle asserts that, even after the appropriate easements had finally been attained, neither EMWA nor Fouche gave Triangle notice that it could continue its work, resulting in more unnecessary delays.

¶4.     Triangle also argues that Fouche elected to expand the size and scope of the project "long after the [p]roject had been designed, sealed by [Fouche], and long after the Notice to Proceed . . . had been issued to Triangle." Triangle asserts that, as a result, EMWA and Fouche "made repeated oral promises to Triangle that [they] would execute a 'Summary Change Order' that would fairly compensate Triangle for the greatly-expanded scope of work that it was commanded to perform"; however, Triangle maintains that it never received such an order.

¶5.     Triangle contends that, upon ultimate completion of the project, EMWA sent Triangle a check marked "Final Payment," but the check did not compensate Triangle for its increased

3

construction costs as a result of the delays or for the extracontractual project expansion. Triangle concedes that it cashed the check, but argues that it repeatedly asserted to EMWA—including in a letter sent to Fouche—that it did not consider EMWA's "final payment" to be final and that it would continue seeking the remainder of what it was owed.

¶6.     Triangle's lawsuit against both EMWA and Fouche, as codefendants, alleged breach of contract, unjust enrichment or quantum meruit, breach of the covenant of good faith and fair dealing, and negligence.  As stated, the circuit court granted Fouche's motion for summary judgment, leading to this appeal.

¶7.     Additional facts, as necessary, will be discussed throughout the opinion.

DISCUSSION

¶8.     Rule 56(c) of the Mississippi Rules of Civil Procedure provides that a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).  "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quoting *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (¶5) (Miss. 2012)). "However, to survive summary judgment, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific

4

facts showing there is a genuine issue for trial." *Huynh v. Phillips*, 95 So. 3d 1259, 1262 (¶6) (Miss. 2012) (citation and internal quotation marks omitted). "Summary judgment is appropriate where a non-moving party who will bear the burden of proof at trial does not establish the existence of an essential element to his case." *Gorman-Rupp Co. v. Hall*, 908 So. 2d 749, 757 (¶ 25) (Miss. 2005) (citation omitted).

¶9. For clarity, we will first address whether Triangle's negotiation of EMWA's check marked "final payment" operated as an accord and satisfaction of its claims against EMWA and Fouche; next, we will address Triangle's contract claims, including both Fouche's status as a party to the Contract and whether Fouche was contractually obligated to acquire the easements; finally, we will address Triangle's claims with respect to whether Fouche breached any duties in tort that it may have owed to Triangle.

### 1. *Accord and Satisfaction*

¶10. Triangle maintains that there are genuine issues of material fact regarding whether it reached an accord-and-satisfaction agreement with EMWA and Fouche, such that summary judgment should not have been granted.

¶11. Mississippi law requires satisfaction of four elements for an accord and satisfaction to exist:

> (1) something of value must be offered "in full satisfaction of a demand"; (2) the offer must be "accompanied by acts and declarations [that] amount to a condition that if the thing is accepted, it is accepted in satisfaction"; (3) "the party offered the thing of value" must "understand that if he takes it, he takes subject to such conditions"; and (4) the party offered the item must "actually . . . accept the item.

5

*Stewart v. Bridge Props., LLC*, 62 So. 3d 979, 986-87 (¶18) (Miss. Ct. App. 2010) (quoting

*Waggoner v. Williamson*, 8 So. 3d 147, 156 (¶18) (Miss. 2009)).

¶12.    In *Dix v. Trigger Contractors, Inc.*, 337 So. 2d 694, 696-97 (Miss. 1976), the

Mississippi Supreme Court held that an accord and satisfaction existed where the debtor gave

a creditor a check labeled "Final Payment" for less than the full amount owed to the creditor,

and the creditor cashed the check but struck through the word "final" and inserted the word

"part" in its place.  The court held that the creditor accepted the payment notwithstanding his

strikethrough of the word "final," and stated, "[t]hat a creditor protests against receiving less

than the full amount of his claim, but, nevertheless, accepts it, is of no consequence[.]" *Id*.

at 697.  A creditor is "duty-bound to either accept the . . . check . . . as conditioned or refuse

to accept it," and "[t]he cashing of the . . . check, conditioned by the debtor as 'Final

Payment,' constituted an accord and satisfaction." *Id*.

¶13.    Here, Triangle maintains that it did not accept EMWA's "Final Payment," because it

repeatedly told EMWA that its acceptance of the check did not waive its claim for further

payment.  The record includes both the check from EMWA for $129,090.07 marked "Final

Payment," and a letter from Triangle's attorney to Fouche, in which Triangle asserts that

$129,090.07 is insufficient payment "for all the work that Triangle performed on this job,"

and that "Triangle does not waive, in any way, its contractual claims to additional funds

under the terms of the bid contract." However, Mississippi law is clear that, despite whatever

contentions a party may make to the contrary, cashing a check marked "final payment"

6

constitutes an accord-and-satisfaction agreement, which precludes that party from bringing future claims for additional payment.

¶14.    Without speaking to Triangle's claim against EMWA, we find that Triangle's claim against Fouche is likely barred as an accord-and-satisfaction agreement. Although the check marked "Final Payment" was specifically provided by EMWA and did not include Fouche's name anywhere on the check, Triangle argues repeatedly on appeal that Fouche acted as EMWA's representative or agent, and that Fouche directly controlled the management of the construction project on behalf of EMWA. Further, the very letter written by Triangle asserting that it would continue to seek payment, despite cashing the "final payment" check, was written to Fouche, not EMWA. Triangle has centered much of its argument upon the contention that Fouche acted as EMWA's agent. However, with respect to its argument regarding accord and satisfaction, it argues that EMWA and Fouche are separate entities. We refuse to allow Triangle to have it both ways. It cannot now argue that Fouche and EMWA are separate entities solely for the sake of its accord-and-satisfaction argument. Thus, we hold that Triangle's claims against Fouche are barred pursuant to the doctrine of accord and satisfaction. This fact notwithstanding, we address the remainder of Triangle's claims against Fouche.

*2.    Issues in Contract*

¶15.    Triangle maintains that genuine issues of material fact exist as to whether Fouche owed a contractual duty to Triangle—either expressly or through a contract implied in

7

fact—to obtain the easements on behalf of EMWA.

### a. *Whether Fouche was an express party to the Contract*

¶16. Triangle maintains that Fouche was a party to the Contract, either expressly or implied in fact from Fouche's conduct throughout the duration of the construction project. Fouche disagrees. "A de novo standard of review is applied to questions of contract construction." *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶16) (Miss. 2012) (citation omitted). When presented with a contractual dispute in the context of summary judgment, the reviewing court need not go through the traditional analysis of contract construction. *Id*. at 17 (¶20). Rather, the court

> should determine only whether the contract is ambiguous. Questions of contract construction and ambiguity are questions of law that are committed to the court rather than questions of fact committed to the fact finder. If the reviewing Court finds the terms of the contract to be ambiguous or subject to more than one interpretation, the case must be submitted to the trier of fact, and summary judgment is not appropriate.

*Id*. (internal citation and quotation marks omitted). Although Triangle does not assert in its brief that the Contract was ambiguous, the parties dispute whether Fouche was a party to the Contract. Thus, we will analyze the Contract to determine whether it is ambiguous with respect to Fouche's role therein.

¶17. As stated, Triangle asserts that Fouche was a party to the Contract, despite the fact that Fouche did not actually sign the agreement. Triangle's argument is premised on the fact that Fouche's company's seal was affixed to the Contract's cover and Fouche was designated as the project's engineer in the Contract's terms. Triangle points to Section 3.01 of the

8

Contract, which provides that Fouche "is to act as [EMWA's] representative, assume all duties and responsibilities, and have the rights and authority assigned to [Fouche] in the Contract Documents in connection with the completion of the Work in accordance with the Contract Documents." Triangle maintains that, as EMWA's representative, Fouche was liable for failing to obtain the easements in a timely manner, pursuant to Section 4.01 of the Contract[3] requiring EMWA—as the project-owner—to "obtain in a timely manner and pay" for easements necessary for completing the project. Finally, Triangle references Section 12.03 of the Contract,[4] which provides:

> If [EMWA], [Fouche], or other contractors or utility owners performing other work for [EMWA] as contemplated by Article 7, or anyone for whom [EMWA] is responsible, delays, disrupts, or interferes with the performance or progress of the Work, then Contractor shall be entitled to an equitable adjustment in the Contract Price or the Contract Times, or both.

¶18. Fouche disagrees and argues that it is not a party to the Contract. First, Fouche references Section 9.09(A) of the Contract,[5] which provides:

> Neither [Fouche's] authority or responsibility under this Article 9 or under any other provision of the Contract Documents nor any decision made by [Fouche] in good faith either to exercise or not exercise such authority or responsibility or the undertaking, exercise, or performance of any authority or responsibility by [Fouche] shall create, impose, or give rise to any duty in contract, tort, or

---

[3] Section 4.01 is located on page GC-12, which is expressly deemed part of the "Contract Documents." Thus, we include it in discussion of the "Contract," as a whole.

[4] Section 12.03 is located on page GC-41, which is expressly deemed part of the "Contract Documents." Thus, we include it in discussion of the "Contract," as a whole.

[5] Section 9.09(A) is located on page GC-33, which is expressly deemed part of the "Contract Documents." Thus, we include it in discussion of the "Contract," as a whole.

otherwise owed by [Fouche] to [Triangle] . . . .

Fouche further argues that it is not an agent of EMWA, and its role as EMWA's representative is limited to only those duties and responsibilities "assigned to [Fouche] in the Contract Documents in connection with the completion of the Work in accordance with the Contract Documents." Fouche maintains that the Contract expressly limits Fouche's involvement and that, while it may be EMWA's representative in title, it holds no duty in contract or tort to Triangle.

¶19. We agree with Fouche that it is not an express party to the Contract. We note that the specific portion of the Contract in dispute—the "Specifications for Water Distribution System Addition 2009" agreement—is entitled "AGREEMENT BETWEEN OWNER AND CONTRACTOR FOR CONSTRUCTION CONTRACT (STIPULATED PRICE) FUNDING AGENCY EDITION." The title makes no mention of Fouche, and expressly provides that this Contract is between the Owner (EMWA) and the Contractor (Triangle). Fouche's role in the project is not even mentioned until Section 3.01. While Triangle relies on this language to argue that Fouche is EMWA's agent and is therefore responsible for any shortcomings committed by EMWA, Triangle overlooks the critical language limiting Fouche's role only to that specified by the Contract. Section 4.01 provides that EMWA is responsible for obtaining the easements; Section 9.09(A) of the Contract provides that no provision of the Contract or behavior by Fouche will "create, impose, or give rise to any duty in contract, tort, or otherwise owed by [Fouche] to [Triangle]." These provisions explicitly

limit Fouche's duties and do not include the responsibility of obtaining easements. Triangle acquiesced to this language when it signed the contract. Thus, we find no merit to this argument.

b.       *Whether Fouche and Triangle had a contract, implied in fact, for Fouche to procure the easements*

¶20.    Triangle alternatively contends that if Fouche is not an express party to the Contract, Fouche had a contractual duty to obtain the easements, implied in fact from the parties' behavior throughout the duration of the construction project. "A contract that arises from the conduct of the parties, also known as a contract implied in fact, has the same legal effect as an express contract." *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 120 (¶34) (Miss. 2003) (citations omitted). A contract implied in fact—also referred to as a quasi-contract—"is an obligation created by law, in the absence of an agreement, when and because the acts of the parties or others have placed in the possession of one person money under circumstances that in equity and good conscience he ought not to retain and which in justice and fairness belong to another." *Id*. at 120-21 (¶35). "[A]ny conduct of one party from which the other party may draw the inference of a promise is effective as such and the conduct of the parties is viewed as a reasonable man would to determine the existence or not of the contract implied in fact." *Id*. at 121 (¶35) (citation omitted). "To collect under an unjust enrichment or quasi-contract theory, the claimant must show 'there is no legal contract but . . . the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.'" *Id*. (citation

11

omitted).

¶21.   Triangle maintains that its only communication regarding the project was with Fouche, and that Fouche controlled when and where Triangle worked.  Triangle also contends that, "despite provisions in the [C]ontract to the contrary, Fouche . . . controlled the day-to-day ground operations, including giving Triangle instructions on where to lay pipe as well as to where and what private easements had been obtained."  In response, Fouche again references Section 4.01 of the Contract, which unambiguously provides that EMWA—not Fouche—had the duty to procure the easements for the project, and that Triangle may not now offer parol evidence suggesting otherwise.  Further, Fouche provides evidence that EMWA accepted responsibility for obtaining the easements.  In a letter dated December 27, 2010, from Fouche to Triangle, Fouche's president stated, "The Owner has informed us that they have obtained sufficient private and/or public easements for you to complete this project."  The Owner, as specified by the Contract, was EMWA.  Finally, Fouche presented evidence that EMWA's president, Arthur Tate, stated in a deposition, "No, [Fouche] didn't get no [sic] easements.  We get the - - East Madison Water Association is the one who gets easements.  Engineers don't do easements.  We do easements."

¶22.   Given these facts, it is evident that EMWA was responsible for procuring the easements for the project.  Again, we find no merit to this issue.

### 3.     Issues in Tort

¶23.   Triangle maintains that genuine issues of material fact exist as to whether Fouche

12

breached its duty to Triangle to act in a reasonable and prudent manner in its professional capacity. Triangle argues that Fouche breached this duty in the following ways: (1) in negligently designing the project; (2) in extracontracually expanding Triangle's scope of work long after the written Contract had been executed by the parties; (3) in issuing a notice to Triangle to proceed with the project months before obtaining the necessary easements; and (4) in failing to provide notice to Triangle until early 2013 that permits were obtained on October 4, 2010. In response, Fouche contends that it did not owe any duty to Triangle at all, referencing Section 9.09(A) of the Contract. Further, Fouche maintains that even if it owed a duty and consequently breached that duty, there is no evidence that the alleged breach proximately caused Triangle's damages.

¶24. Both Triangle and Fouche cite *Magnolia Construction Co. v. Miss. Gulf South Engineers, Inc.*, 518 So. 2d 1194, 1202 (Miss. 1988), in support of their arguments regarding whether Fouche owed any duty in tort to Triangle. In *Magnolia*, our supreme court reversed a grant of summary judgment where it found that a genuine issue of material fact existed with respect to a project-engineer's duties to the project-contractor who was engaged in construction as part of an agreement with the project-owner. *Id*. at 1197. Triangle points to the portion of the *Magnolia* opinion providing that certain design professionals, such as project-engineers, still owe a duty to project-contractors to exercise ordinary professional skill and diligence—even where the engineer and contractor are not in a direct contractual relationship—because of the inherent nature of the engineer's contract with the project-

owner:

> [W]here the engineer does not have a direct contractual relationship with the contractor, the legal duty which forms the basis of the contractor's negligence claim still must arise from a contract-based obligation of the engineer to the [party with whom the contractor has actually contracted and for whom the engineer works]. Indeed, Mississippi law imposes on design professionals (architects/engineers) the duty to exercise ordinary professional skill and diligence. Further, Mississippi law allows third parties to rely on a design professional's contractual obligation to the owner.

*Id*. at 1202 (internal citation and quotation marks omitted). In response, Fouche references the portion of the opinion providing that any duty a project-engineer owes to a project-contractor as part of its contractual duty to the project-owner must be determined by the contract between the engineer and the owner:

> The trial judge was correct in trying to determine the intent of the parties to the contract from the four corners of the document. Early on, this Court stated the principle that in construing a contract, the instrument as a whole will be looked to and its meaning determined for the entire agreement as written in order to ascertain the intentions of the parties from the contract.

*Id*. at 1203-04 (citations and internal quotation marks omitted).

¶25. *Magnolia* is distinguishable from this case for several reasons: First, the *Magnolia* court directly referenced the contract between the project-owner and project-engineer in its decision, whereas we cannot do so because our record does not include any separate contractual agreement between the EMWA, the project-owner, and Fouche, the project-engineer; the extent of any contractual dealings between Triangle and Fouche appears to be limited to the terms of the Contract, in which Fouche's duties are expressly limited. *Id*. Further, our supreme court referenced several pieces of evidence in *Magnolia*—including

14

affidavits from the project-contractor's president and a crew member and a deposition from the project-engineer's staff—which gave rise to a genuine issue of material fact regarding whether the project-engineer had actually owed and breached a duty to the project-contractor. *Id.* In contrast, here, there is insufficient evidence to suggest that Fouche actually owed any extracontracual duties in tort to Triangle, as Triangle suggests. Not only do the terms of the Contract explicitly provide otherwise, as evidenced by Section 9.09(A), quoted above, but we also have the deposition of Triangle's president, Robert King, in which King indicates that Fouche was not even responsible for the duties that Triangle now argues it was. When asked specifically about being given the directive to continue work after the necessary easements had been obtained, King answered that Triangle only knew it was able to proceed "[a]t the direction of the engineer and Mr. Meyer[6]." However, this statement is directly contradicted later in King's deposition, where he explains the function of a notice to proceed:

> The directive to be able to go out and do the work in an easement, whether it's public or private, to direct me to continue doing work, whether that be from Mr. Meyer, as an agent of [Fouche], or whether it was an actual member of [Fouche], you know, or [EMWA]. Somebody would direct me to go and say, ["]You can continue your work here in this area.["] Outside of that, you know, that's the only direction that we have to be able to go to work.

The only other evidence provided by Triangle suggesting that Fouche owed extracontractual duties to Triangle includes an affidavit by Triangle's president, Robert King, in which King maintained that Triangle's communications were exclusively with Fouche, not EMWA.

---

[6] Ronald Meyer was the project inspector on behalf of Fouche.

15

However, this evidence is insufficient to show that Fouche owed a duty to Triangle outside of those expressly delineated within the Contract, particularly in light of the Contract's direct language limiting Fouche's duties to Triangle. In light of these facts, we cannot say that Fouche owed any extracontractual duties to Triangle regarding this project.

¶26. As previously stated, Triangle has the burden of establishing that there is a genuine issue of material fact regarding an essential element of its case. Given the evidence before us, we cannot find that there is a genuine issue of material fact with respect to the issues put forth by Triangle, and that the circuit court erred in granting summary judgment. Thus, we find that Fouche owed no duty to Triangle. We find that this is dispositive of any issue regarding breach or proximate cause and therefore decline to consider these issues.

¶27. In summary, we find that the circuit court did not err in granting Fouche's motion for summary judgment. Although the circuit court offered no reason for its decision, our de novo analysis of these issues on appeal leads us to conclude that (1) Triangle's act of cashing EMWA's check marked "final payment" constituted an accord-and-satisfaction agreement and subsequently barred Triangle from bringing claims against Fouche, and (2) Triangle failed to show any genuine issue of material fact with respect to its other claims. Accordingly, we affirm.

¶28. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**