# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01619-COA

**RICHARD AND CYNTHIA McCARVER**                                    APPELLANTS

**v.**

**RICHARD L. BOGAN AND GOVERNMENT**                                 APPELLEES
**EMPLOYEES INSURANCE COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2018 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN THOMAS LAMAR III |
| | TAYLOR ALLISON HECK |
| ATTORNEYS FOR APPELLEES: | WILTON V. BYARS III |
| | DAVID EARL ROZIER JR. |
| | JENESSA JO CARTER HICKS |
| | MARK CHRISTOPHER WOODS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 01/14/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Richard McCarver (McCarver) was injured in an accident when another vehicle

driven by Richard Bogan (Bogan) crossed the center line.  McCarver and his wife, Cynthia,[1]

filed suit in the Marshall County Circuit Court against Bogan.  In the complaint, the

McCarvers alleged that Bogan was liable for unpaid property damage and bodily injury

---

[1] Throughout this opinion "McCarver" refers to Richard McCarver.  The "McCarvers" references both Richard and Cynthia McCarver.  "Bogan" refers to Richard Bogan.

claims arising out of the accident. The McCarvers later amended their complaint to include their insurer, GEICO, as a defendant under an underinsured-motorist-coverage claim. After three months of discovery, Bogan filed a motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure, stating McCarver had accepted a settlement check from Bogan's insurer that read "full and final settlement" of "any and all" claims "for bodily injury." GEICO joined his motion and supplemented a response. After a hearing on the motion, the circuit court granted Bogan's summary judgment motion and entered judgment, ruling that an accord and satisfaction had occurred. On appeal, the McCarvers argue the circuit court erred in granting summary judgment. Finding error, we reverse and remand this matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 22, 2014, Bogan was involved in a head-on collision with McCarver when Bogan crossed into McCarver's traffic lane. Bogan was insured by Allstate. McCarver's insurance was with GEICO. Under the GEICO policy, McCarver had uninsured and underinsured motorist coverage. Because of it, GEICO paid McCarver the base value of McCarver's vehicle.[2] McCarver called Allstate, Bogan's insurer, claiming to their adjustor that he had not been reimbursed in full for his property damage. Specifically, McCarver sought payments for loss of rebate, the increased down payment on his new vehicle, and

---

[2] The record fails to indicate the exact date GEICO paid McCarver for the value of his truck. However, Allstate's financial log shows that Allstate reimbursed GEICO, in whole or in part, on Feburary 2, 2015, in the amount of $24,786.00.

2

specific items he had added to his vehicle prior to the accident, such as window tint and a toolbox. The Allstate adjustor informed McCarver that Allstate was not responsible for the rebate loss or the additional down payment.

¶3. Following their conversation, the adjustor visited McCarver at his body shop on or around October 8, 2014. There, the adjustor issued McCarver a check in the amount of $2,160.00 that included a notation in the upper left-hand corner that stated "full and final settlement" of "any and all" claims "for bodily injury." A copy of the check is pictured in the appendix below. McCarver cashed the check five days later on October 14, 2014. The parties dispute what was said before and at the time the check was issued to McCarver. The McCarvers claim the $2,160.00 check was the result of "an agreement regarding the additional items McCarver had purchased for his truck [prior to the accident]." Bogan contests that the check was negotiated "to settle McCarver[']s bodily injury claim[s]."

¶4. However, Allstate's financial log evinces six additional checks that Allstate issued to various payees for McCarver's benefit because of the automobile accident. The second, third, fourth, and fifth checks were issued on October 9, 2014. The second check paid McCarver in the amount of $214.00. The parties fail to mention this check in their briefs. According to the financial log, however, the transactional reason for the check was "property damage liability." The third, fourth, and fifth checks were issued to various medical

3

providers to pay for McCarver's immediate medical expenses.[3] Allstate reimbursed GEICO by the sixth check in February 2015 in the amount of $24,786.00 for damage to McCarver's vehicle. The seventh (and final) check from Allstate was issued on August 12, 2015, to Methodist Hospital for $11,737.40 to pay for McCarver's additional medical bills.

¶5. On April 26, 2017, the McCarvers filed suit in Marshall County Circuit Court against Bogan for unpaid property damage and bodily injury claims. According to the McCarvers' complaint, McCarver was driving north on Highway 309 in Marshall County, and Bogan was driving south. McCarver claimed that without warning "[Bogan] recklessly crossed over into [McCarver's] lane of travel and struck [McCarver's] vehicle head on." The McCarvers alleged that Bogan's negligence caused McCarver property damage, personal injury, and pain and suffering; and Cynthia alleged loss of consortium. On January 5, 2018, the McCarvers amended their complaint to add their insurer, GEICO, due to its underinsured motorist coverage because it was learned during discovery that Bogan's automobile-liability-insurance policy limit was for only $25,000.00.[4] Bogan answered on January 23, 2018, and GEICO answered on January 29, 2018. Discovery proceeded for the next three months.

¶6. On April 26, 2018, Bogan moved for summary judgment, relying on the notation

---

[3] They were made payable to Washington Group PLLC (an emergency medicine group) for $1,292.00; to Memphis Radiological PC for $890.00; and to MedStat EMS Inc. for $765.00.

[4] The amended complaint states that the McCarvers "were an insured under several policies of uninsured/underinsured motorist insurance with GEICO, which policies of insurance provided underinsured motorist coverage in an amount of at least $25,000 per covered vehicle."

listed on the front of the first check. According to Bogan, the check constituted an accord and satisfaction, thus barring the McCarvers from seeking additional funds from Bogan. On May 16, 2018, GEICO joined and supplemented Bogan's summary judgment motion. The McCarvers responded in opposition on July 6, 2018, and asserted that Bogan and GEICO's proof failed to satisfy the elements of an accord and satisfaction. In support of their argument, McCarver attached an affidavit that read in part:

> After the payoff, my wife and I called the adjustor for Allstate and informed him that we had additional property damages that were not reflected in the base value of the truck paid off by GEICO. Specifically, the loss of the rebate, the increased down payment, tinted windows, and a toolbox.
>
> The Allstate adjustor informed me that Allstate was not responsible for the rebate loss and the additional down payment. However, the adjuster did come to my body shop and give me a check for $2,160.00, which the adjustor represented was for my additional property damage, like the tinted windows, and the toolbox.
>
> I never discussed my claims for bodily injury with the Allstate adjustor. All of our discussions were about my additional property damage only. At no time did we discuss any payment and/or settlement for my bodily injury claims.

¶7. On June 25, 2018, the court held a hearing on Bogan and GEICO's joint summary-judgment motion. At the hearing, the circuit court judge expressed reservation in granting Bogan's motion. The parties and the judge noted it was odd that McCarver was not required to sign a release at the time the $2,160.00 settlement check was given to McCarver. The judge also pointed out that Bogan had failed to locate the Allstate adjustor who dealt with and spoke with McCarver concerning McCarver's claim before and at the body shop. No

5

affidavit on the adjustor's version of the facts was tendered to the court.[5] The judge also struggled with the decision because the parties had not yet taken depositions in the case.

¶8.    But, without further proceedings, the circuit court granted Bogan and GEICO's joint motion for summary judgment on October 17, 2018. The McCarvers appeal to this Court. The McCarvers claim that summary judgment was in error. We agree. At that stage of the proceedings, the motion should have been denied.

## STANDARD OF REVIEW

¶9.    Rule 56(c) of the Mississippi Rules of Civil Procedure provides that a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). This Court reviews a decision granting or denying summary judgment de novo. *Tobias v. Univ. of Miss. Med. Ctr.*, 282 So. 3d 1188, 1190 (¶5) (Miss. Ct. App. 2019) (citing *Hubbard v. Wansley*, 954 So. 2d 951, 956 (¶9) (Miss. 2007)). The evidence is viewed in the light most favorable to the non-moving party. *Massey v. Tingle*, 867 So. 2d 235, 238 (¶6) (Miss. 2004). However, "[t]he non-moving party may not rest upon allegations or denials in the pleadings but must set forth specific facts that there are genuine issues for trial." *Id.*

_____

[5] At the summary judgment hearing, Bogan's attorney stated that she made attempts to find the adjustor.

**DISCUSSION**

¶10.     The McCarvers maintain that there are genuine issues of material fact regarding whether McCarver and the adjustor reached an accord and satisfaction.

¶11.     The four basic elements of an accord and satisfaction are the following:

> (1) something of value must be offered "in full satisfaction of a demand"; (2) the offer must be "accompanied by acts and declarations that amount to a condition that if the thing is accepted, it is accepted in satisfaction"; (3) "the party offered the thing of value" must "understand that if he takes it, he takes subject to such conditions"; and (4) the party offered the item must "actually accept the item."

*Stewart v. Bridge Props. LLC*, 62 So. 3d 979, 986-87 (¶18) (Miss. Ct. App. 2010) (quoting *Waggoner v. Williams*, 8 So. 3d 147, 156 (¶18) (Miss. 2009)). These elements must be proved by clear and convincing evidence. *Young v. S. Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 106 (Miss. 1991). The circuit court found that an accord and satisfaction was established when McCarver cashed the October 8, 2014 check, which contained the "full and final settlement" of "any and all" "bodily injury claims" notation in the upper left-hand corner. Accordingly, summary judgment was also granted on Cynthia's loss-of-consortium claim.

¶12.     The McCarvers argue that despite the notation on the front of the check, there are still genuine issues of material fact for trial, such as whether the adjustor and McCarver settled his bodily injury claims. McCarver's affidavit opposing the summary judgment motion states that he never discussed a settlement regarding his bodily injury claims with the adjustor. Specifically, McCarver's affidavit stated that "[a]ll of [the] discussions were about my

7

additional property damage . . . . At no time did we discuss any payment and/or settlement for my bodily injury claims."

¶13. GEICO contests the McCarvers' argument and asserts that although McCarver may not have read the notation on the front of the check, a party is not excused from the terms listed on the check. To support its contention, GEICO cites to two cases: *D.R. Dix* and *Triangle*.

¶14. In *D.R. Dix*, Dix employed Trigger Contractors to disassemble equipment at an oil well and reassemble it at another drilling site. *D.R. Dix v. Trigger Contractors Inc.*, 337 So. 2d 694, 694 (Miss. 1976). After the work was performed, Dix handed a $1,500.00 check marked as "Final Payment" to Trigger Contractors, even though Trigger Contractors had submitted invoices totaling $5,885.50. *Id.* Trigg, the president of Trigger Contractors, informed Dix that he could not accept the check as final payment, stating instead that he needed the money. *Id.* Thereafter, Trigg went to the bank to cash the check, but before he did so, he lined out the word "Final" and wrote the word "Part," making the notation read "Part Payment."[6] *Id.* at 695. Trigger then filed suit in Wayne County Chancery Court for the remaining balance. *Id.* The Mississippi Supreme Court stated that the creditor, Trigger Contractors, "was duty-bound to either accept the $1,500 check . . . as conditioned or refuse to accept it." *Id.* at 697. "Trigger had no right or authority to alter the check and change the

---

[6] On the back of the check, Trigg typed: "excepted [sic] by Trigger Contractors Inc. as part payment only. Balance due on account $2,885.50." *Id*. at 695.

8

condition on which it was tendered, that is from 'Final Payment' to 'Part Payment.'" *Id*. The supreme court held that the cashing of the $1,500.00 check constituted an accord and satisfaction. *Id.*

¶15.    Similarly, in *Triangle*, Triangle Construction Company (Triangle) won a bid offered by East Madison Water Association (EMWA) for a construction project to build a water system. *Triangle Constr. Co. v. Fouche & Assocs.*, 218 So. 3d 1180, 1183 (¶2) (Miss. Ct. App. 2017).  Upon completion of the project, Triangle contended that EMWA sent Triangle a check marked "Final Payment" but that the check did not account for increased construction costs. *Id.* at 1184 (¶5).  At trial, Triangle conceded that it cashed the check but argued that it had repeatedly asserted to EMWA that it did not consider the check "final payment." *Id.*  Fouche and Associates, the contract engineer, filed a motion for summary judgment claiming an accord and satisfaction had been established, and the Rankin County Circuit Court granted the motion. *Id.* at (¶6).  On appeal to this Court, Triangle maintained "that there [were] genuine issues of material fact regarding whether it [had] reached an accord-and-satisfaction agreement with EMWA and Fouche." *Id.* at (¶10).  This Court disagreed and held, "Despite whatever contentions a party may make to the contrary, cashing a check marked 'final payment' constitutes an accord-and-satisfaction agreement, which precludes that party from bringing future claims for additional payment." *Id.* at 1185 (¶13).

¶16.    Yet we find these cases to be distinguishable from the instant case.  In *D.R. Dix* and *Triangle*, the creditors understood they were accepting a check valued at an amount less than

9

what they were owed. In the instant case, McCarver's unrebutted affidavit articulates that he did not discuss a "full and final settlement" with the adjustor before or at the time the check was issued. Instead, we believe *Young v. Southern Farm Bureau Life Ins. Co.*, 592 So. 2d 103 (Miss. 1991), is instructive.

¶17. In that case, a widow sued her insurer several years after her husband's death, alleging the insurer had breached a duty of fair dealing and good faith by failing to pay the entire life-insurance policy proceeds. *Id.* at 104. Similar to the instant case, an agent for Southern Farm Bureau went to the widow's home to execute necessary claim documents. *Id.* at 105. There, the agent explained to the widow that she would only receive half of the proceeds because part of the policy was no longer in effect. *Id.* To this end, the agent stated that the widow signed a death-benefits claim form, providing that she would receive only half of the proceeds. *Id.*

¶18. At trial, the widow testified that the death-benefits claim form was not filled out when she signed it. *Id.* "She stated that she never understood that she was to receive less than $50,000 until [the agent] brought the lesser amount to her home . . . ." *Id.* In response, Southern Farm Bureau filed a motion for summary judgment. *Id.* After a hearing on the motion, the circuit court granted summary judgment, finding that an accord and satisfaction was established when the widow "negotiated with [Southern Farm Bureau]" and "when [she] endorsed and cashed the proceeds check . . . ." *Id.* at 106. The widow appealed. *Id.* On appeal, the Mississippi Supreme Court reversed the circuit court's decision, finding that

10

certain issues of material fact still remained, such as:

(1) Did [the widow] accept the June 27, 1983 check, with knowledge that it was in full settlement of her claim?

(2) Did Southern Farm Bureau tender the $25,472.02 proceeds check in complete settlement of the Young claim considering that the proceeds check contained no release-of-claim notation as did other checks issued to appellant?

(3) Did [the widow] sign the death benefits claim form in blank or after completion?

*Id.* at 106-07. Because genuine issues of material fact existed, our supreme court held that Southern Farm had not yet proved the elements of an accord and satisfaction by clear and convincing evidence. *Id.* at 107.

¶19. We come to the same conclusion, here. For the circuit court to grant summary judgment on this record, it would have to resolve similar questions of fact: (1) Did McCarver accept the October 8, 2014 check with knowledge and understanding that it was a full settlement of *all* claims; (2) Did Allstate tender the check in complete settlement of McCarver's claims, considering McCarver did not sign a release form at the time the check was issued; (3) If it was final payment, why would Allstate make more payments on behalf of McCarver; (4) Did the Allstate adjustor discuss McCarver's bodily injury claims with McCarver, or were there conversations strictly concerning property damage? At this time, we are presented with McCarver's unrebutted affidavit to depend on. We have nothing from the Allstate adjustor who tendered the check to McCarver. Allstate also paid an additional

11

bodily injury claim for $11,737.40 ten months after the $2,160.00 check was issued.[7]

¶20. Moreover, the elements of an accord and satisfaction are clear. The party that offered the thing of value *must understand* that if he takes it, he takes subject to such conditions. *See Stewart*, 62 So. 3d at 986-87 (¶18). We believe the presence of the above issues—especially whether McCarver understood the condition he was accepting, and as there were antecedent payments made to benefit McCarver—prevents the disposition of this cause by this motion for summary judgment. However, the issue of accord and satisfaction after remand remains with the trial court. It was Bogan and GEICO's burden to prove that an accord and satisfaction was met by clear and convincing evidence. *Young*, 592 So. 2d at 106. In the current stage, we are to view the evidence in the light most favorable to McCarver. *Massey*, 867 So. 2d at 238 (¶6). Because genuine issues of material fact exist on whether there was an accord and satisfaction, and such was not proved by clear and convincing evidence, summary judgment was not appropriate.

**CONCLUSION**

¶21. "Summary judgment lies only when there is no genuine issue of material fact" and is not a substitute for the trial of disputed issues of fact. *Wertz v. Ingalls Shipbuilding Inc.*, 790 So. 2d 841, 845-46 (¶11) (Miss. Ct. App. 2000). Summary judgment is not to be used as a means of depriving a litigant of a full trial on genuine factual issues. *Dethlefs v. Beau*

---

[7] Allstate's financial log shows that Allstate paid Methodist Hospital on August 12, 2015, in the amount of $11,737.40. The "transactional reason" for check states "regular bodily injury."

12

*Maison Dev. Corp.*, 458 So. 2d 714, 716 (Miss. 1984). Genuine issues of material fact remain in the case as it is before us. Therefore, we hold that the circuit court erred by granting Bogan and GEICO's motion for summary judgment and that this cause should be reversed and remanded for further proceedings consistent with this opinion.

¶22. **REVERSED AND REMANDED.**

**BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY J. WILSON, P.J.**

**CARLTON, P.J., DISSENTING:**

¶23. I dissent because I find that an accord and satisfaction was established in this case when McCarver received and cashed the October 8, 2014 check that had the following notation typed on the front left-hand corner: "IN PAYMENT OF FULL AND FINAL SETTLEMENT OF ANY AND ALL CLAIMS FOR BODILY INJURY ARISING FROM LOSS OF 8/22/14." For this reason I would affirm the circuit court's decision to grant summary judgment in Bogan and GEICO's favor.

¶24. I find that the accord and satisfaction principles discussed in the *D.R. Dix* and *Triangle* cases apply to the circumstances in this case. In *D.R. Dix*, 337 So. 2d at 696, the creditor cashed a check conditioned by the debtor as "final payment," but before it did so the creditor indicated that it disputed the amount owed to it by striking out the word "final" and replacing it with the word "part" so that the notation read "part payment." The supreme court held that the creditor was not authorized "to change the condition on which [the check] was

13

rendered," *id.* at 697, but instead, the creditor "was duty-bound to either accept the $1,500 check of July 3, 1974, as conditioned[,] or refuse to accept it." *Id.* As such, the supreme court found that the creditor's "cashing of the $1,500 check, conditioned by the debtor as 'Final Payment,' constituted an accord and satisfaction." *Id.* Similarly, in *Triangle*, 218 So. 3d at 1185 (¶12), this Court held that "Mississippi law is clear that, despite whatever contentions a party may make to the contrary, cashing a check marked 'final payment' constitutes an accord-and-satisfaction agreement, which precludes that party from bringing future claims for additional payment."

¶25. I see no reason why the same accord-and-satisfaction rule explained in these cases should not apply to the McCarvers in this case. The majority distinguishes the holdings in *D.R. Dix* and *Triangle* because in those cases "the creditors understood they were accepting a check valued at an amount less than what they were owed." In this case, McCarver asserts that he did not understand that the $2,160 check (dated October 8, 2014) he received from the Allstate adjuster was in full payment of his bodily injury claims. I do not find that McCarver's assertions create a genuine issue of material fact in the light of the plain language printed in all capital letters on the front of the October 8, 2014 check. The rule is plain: "[McCarver] was duty-bound to either accept the . . . check . . . *as conditioned* or refuse to accept it." *D.R. Dix*, 337 So. 2d at 697 (emphasis added).

¶26. Further, Mississippi case precedent makes it clear that "'a party [to a contract] may neither neglect to become familiar with the terms and conditions and then later complain of

14

lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it.'" *Brown v. Anderson*, 80 So. 3d 878, 881-82 (¶9) (Miss. Ct. App. 2012) (quoting *Miss. Credit Ctr. v. Horton*, 926 So. 2d 167, 177 (¶31) (Miss. 2006)). Under these authorities, I would affirm summary judgment in Bogan and GEICO's favor.

¶27. Additionally, unlike the majority, I do not find that *Young* requires a different result. In that case, the supreme court reversed the trial court's decision to grant summary judgment in favor of the insurance company where the decedent's widow cashed a life insurance disbursement check that the adjuster claimed was in full payment of the benefits owed to her. *Young*, 592 So. 2d at 105-07. In reaching this decision, the supreme court specifically observed that the check Millie Young received "contained no release-of-claims notation." *Id.* at 107. This factor, among others, compelled the supreme court to find that genuine issues of material fact existed in that case so as to preclude summary judgment in the insurer's favor. *Id.*

¶28. In direct contrast, the check McCarver received in this case plainly indicated that it was "IN PAYMENT OF FULL AND FINAL SETTLEMENT OF ANY AND ALL CLAIMS FOR BODILY INJURY ARISING FROM LOSS OF 8/22/14." I find that this makes the *Young* decision distinguishable from the circumstances in this case. For all these reasons, I dissent.

**J. WILSON, P.J., JOINS THIS OPINION.**

15

# APPENDIX

The image shows an Allstate insurance settlement check with the following details:

INSURED: RICHARD BOGAN
CLAIMANT: RICHARD MCCARVER
IN PAYMENT OF: FULL AND FINAL SETTLEMENT OF ANY AND ALL CLAIMS
FOR BODILY INJURY ARISING FROM LOSS OF 8/22/2014

POLICY NUMBER: 945239365
CLAIM NUMBER: 0338551385
TAX ID: DESK LOC: DAH EMPLOYEE ID: MOXN 64-1278 611
Bank of America, NA Atlanta DeKalb Cty Georgia
Bank of America Customer Connection

PAY TWO THOUSAND ONE HUNDRED SIXTY DOLLARS AND ZERO CENTS 2,160.00

**Allstate**

INVOICE NUMBER MCO: .2200 DATE ISSUED: 10/08/2014 115029790

COMPANY: ALLSTATE-PROPERTY AND CASUALTY INSURANCE COMPANY

TO THE ORDER OF: RICHARD MCCARVER
2361 HIGHWAY 305
COLDWATER MS 38618-3662

VOID IF NOT PRESENTED WITHIN THREE HUNDRED, SIXTY-FIVE DAYS OF DATE OF ISSUE

AUTHORIZED SIGNATURES